The first case on our calendar is Mary Middleton v. Green Cycle Housing. Good morning. May it please the Court, I am Andrew P. Salidas, representing the appellants Green Cycle Housing LLC and Tal Echstein. The District Court's denial of the appellant's motion pursuant to Federal Rule of Civil Procedure 60B-4 to vacate an Iowa default judgment should be reversed because of the lack of personal jurisdiction over either of the appellants under the jurisdictional principles and laws of the state. In this particular case, the underlying act, subject matter, is the simplest, probably the simplest loan transaction that one could ever find. Unlike most loans in modern times, this was a loan that did not contain any covenants, did not involve any performance, did not involve any... What do you mean? They had to pay it back? They had to pay it back, but that's what makes it the simplest possible thing. It was simply a $1 million loan, in fact funded according to the plaintiff in January of 2007 and then funded further in March of 2007, half and half, and it was 12% loan payable on date X. Eighteen months later. Eighteen months later. The notion that it was extendable or something is unclear, but it doesn't make any difference. But did your client pay the note? No, the business failed and the loan was not paid. My client had two clients, and that's important here. Your individual client signed a personal guarantee, didn't he? No, he did not sign a personal guarantee, and that was recognized both in the district court in Iowa and there is nothing in the record that... The merits don't decide jurisdiction, so... But it does identify a transaction. I'm sorry, Your Honor. If we agree with you and say that Iowa has jurisdiction, then he'll get his chance, I suppose, in a New York court to argue, if it remains timely, gets to argue the merits of his guarantee. But my question is, what was wrong with Judge Coates' finding that there was an agency relationship between the Staben and your clients? The agency relationship, the basis, according to the district court, was a reference to Ms. Davlin in a document that described her as executive director. We have to look at agency... Who made that document? The document was a Green Cycle housing document. Green Cycle made the document? Yes. Green Cycle made reference to Ms. Davlin as an executive director? In that document, but the document, we have to look in a little bit more detail. How did that document come into Ms. Middleton's possession? It was... Green Cycle sent it to her by Ms. Davlin, did it not? It... Did it not? I believe there's faxes of... Not the entire document. That's an open question here. The portion which referred to Ms. Davlin as an executive director was sent by Green Cycle or your individual client to Ms. Middleton in Iowa, was it not? Looks like there's a fax that was transmitting a larger document that contained... It was actually two documents, both of which were described as drafts. Drafts, and they talked about a preferred stock offering of a company to be formed. Yet to be formed didn't even exist. What was the purpose of sending it if it was completely irrelevant to the transaction? It was apparently a long, an overall idea, expression of an idea of something in the future that was still under discussion and it was signed. The document was signed as something... Would a reasonable person take that representation with regard to Ms. Davlin's status, that she had some form of relationship where she was representing or her interests were mutual with regard to that of Green Cycle? Her interests were her own. No, I said no. Don't answer the substance. I asked you a question. Would a reasonable person look at that representation and render, or could they render a conclusion that she had a relationship with Ms., with Green Cycle and your client? In that document alone, the answer is no. There would be more that would need to be known. Now, if I sent you a document for Wesley, Inc., and I said on that document that Mr. Will Denker is an agent for Wesley, Inc., even though Wesley, Inc. is a corporation to be formed, could you reasonably rely upon the fact that Will Denker had some relationship with Wesley, Inc.? To establish an agency, Your Honor, would require two acts. One is the appointment by the principal and acceptance by the agent, and it would require... Or a representation. Or a representation by the principal upon which another person reasonably relies that there's implied authority to act with regard to the principal. As long as it's a representation by the principal, it doesn't have to be explicit. It can be implicit, can it not? Well, I think in the case of an agency where the scope of agency is important and extremely important, not just somebody who's out there doing something, I think you need to know a little bit more. The other thing that's very important here is that that document and the statement referring to Ms. Dowd is a document by Green Cycle Housing, Inc., not the individual. There's nothing here for the individual saying... Can't you create agency by your performance, by holding yourself out as an agent? Could Mrs. Middleton comfortably rely on Ms. Daven's representations that she was the agent? Well, what representations did Ms. Daven actually make? If we go into the original case, when the parties had spontaneous opportunity to describe who she was, there was no such representation made in the Iowa court. It was nothing. In fact, Judge Gretzner said she had some capacity. We do know this, that she was a 25-year-long, lifelong friend of Ms. Middleton herself. So there is a little bit... It cuts both ways. Who's agent for what or for herself or what? These are facts where the district court simply made a conclusion... Did you ask for an evidentiary hearing? It was the first thing that was raised by the court. Did you ask for one? Did you request an evidentiary hearing on the apparent authority or authority point? Explicitly, in these circumstances, Your Honor... I understand that you did not. No, the answer is that the court immediately raised the question whether there should be a hearing regarding disputed facts. Did you say yes? Yes, I did. In fact, I went right on and I described exact... I took issue with that and I specifically enumerated something like 5, 6, 7, 8, 9, 10 facts. So you did request a hearing and the district court denied your request for a hearing. We addressed, Your Honor, we addressed the question of whether there should be a hearing and the clear thrust of what we were arguing and asserting and stating on the record was yes, they were disputed facts. Did you come back and ask the district court after she rendered a decision on the agency point and on the Iowa judgment, did you come back and ask her for a hearing saying you've made, you've inappropriately made decisions on disputed issues of fact? We didn't make a reconsideration motion. The court ruled then and there, immediately closed the record and that was that. You did not come back. In fact, there were other issues in the case that had to be addressed also. There was Mr. Eckstein's father was dying at the time. The court was trying to... Your time has expired long since. You've reserved three minutes for... Yes, thank you. Thank you. Please, the court. My name is Jim Perkins on behalf of Ms. Middleton, the appellee. In answer to your question, did the defense counsel ask for a hearing? The answer is no. The plaintiff's counsel asked the question, judge, are you going to have a hearing on service of process? That was the discussion. And as soon as counsel conceded service of process, which by the way has serious implications here, I think it shifts the burden to them to have to prove lack of jurisdiction, which we brief. But the record is clear that that hearing was about service of process. Now, there was a clear opportunity to ask, as your Honor was asking, for a hearing. It was never asked for, nor did there need to be a hearing. Supreme Court in Anderson, which we both cited in our briefs and is the subject of the 20HA letters that we sent in, says that a district court can resolve fact disputes on the papers if it is appropriate. And that was appropriate here. You had two affidavits from Mr. Etchteen, none of which contained documentary proof, all conclusory. A number of statements made them easily demonstrably false. He said he knew nothing about an entity called Green Cycle, Inc. Well, the document he sent out, the circular, references Green Cycle, Inc. Now, I think the sleight of hand that's being done there is that it was determined that that entity was never formed. But in response to your question, if a principal is making assertions about agency, about this company is the company that you're going to be investing in, we'd like you to invest, that is an affirmative act from the principal. You also heard counsel here admit that that document was sent on behalf of Green Cycle and acknowledging and stating in detail in that document that Ms. Devlin was the executive director of the company. Could you address the personal guarantee issue and what acts Mr. Etchteen took to suggest to Mr. Middleton that Ms. Devlin was his personal representative? Yes. As the district court pointed out, there's an Exhibit Q, which is an e-mail exchange in which Mr. Etchteen is addressing within that e-mail. Ms. Middleton had sent a list of questions and said, I have some questions about this, including the personal guarantee. Mr. Etchteen wrote in, in responses to that, saying part of this is a personal guarantee. Now, the other issue, this offering circular, it's more than an offering circular. It's what the parties intended to reflect the agreement. That document was sent back and forth between the parties and signed by Ms. Middleton and Mr. Etchteen. That document references the fact of a personal guarantee. Is there anything that suggests Ms. Devlin was his agent for personal purposes as opposed to on behalf of the LLC? Absolutely. One of the questions that Ms. Middleton asked was, how are you compensated? And in response to that, Mr. Etchteen in detail says that for every deal that she brings to the table, she gets 3% for capital raise, 10% for any project that she brings, not even just Green Cycle, any project. And also the text messages that probably didn't take the time to look through them because the type is so small, but you see in there an exchange between the two of them talking about deals that they're going to be working on, including a deal in Martha's Vineyard, I believe. So you're saying that created actual agency on his own behalf. Absolutely. For some representations made to Ms. Middleton that Ms. Devlin was an actual agent on his behalf personally. Oh, you mean Ms. Devlin's representations. But you're saying she was actually an agent on his behalf personally. Correct. And then she was therefore authorized to so represent to Ms. Middleton. Well, he also represented it. As I said, in this email exchange, he states this is how she gets paid. I'd like to go back to where opposing counsel started. Tell me why you think the Iowa court had personal jurisdiction over Mr. Etchteen. Absolutely. The case law, and starting with Burger King, I think McGee of the Supreme Court is also a very important case. Even in a loan context, it doesn't matter how simple or complex the loan is. If the borrower solicits a loan within the jurisdiction and says, I'd like to borrow money from you, and there is a negotiation over that, which was clearly shown in these documents, and if following that there is a course of conduct, this was a, Your Honor referenced, an 18-month term, I think the Iowa District Court found it a two-year term because it was extended. I think that's a finding that became a conclusion of law in that judgment. But regardless, whether it's 18 months or two years, that's a long-term obligation. And the case law in Iowa and in the Eighth Circuit talks about, we've set a case called Aquadrill. We've set a case called Agra Credit. What about Twaddle? The Twaddle. The Twaddle case, that case was distinguished, by the way, by this Judge Gritzner in a case called BPI Development, which we cite and discuss. Now, that's a district court case, but it clearly points out in Twaddle, that was a case where the solicitation went the other way. The mother said to the son in another state, I'd like you to borrow some money from me. That's not what happened here. This is a solicitation into the jurisdiction. And the case law is clear. When there's this purposeful availment that results in long-term contractual relationships, that creates or is a jurisdictionally significant fact to create jurisdiction for purposes of personal jurisdiction. The other significant factor here is the guarantee. And I cited these couple of cases that we cite. Iowa Supreme Court, Aquadrill, Agra Credit, both involving personal guarantees. And the court in those cases, that personal guarantee is a jurisdictionally significant factor creating a long-term binding obligation and promising to perform, promising to pay. That's what Burger King, the underpinnings of Burger King. Now, I understand in that case, the fact pattern was a much longer-term relationship. But the arguments made in that case were, I never went to Florida. I didn't deal with Florida. But that's not what the court was looking at. Was there a solicitation and a desire to do business with the Florida company? Here, was there a solicitation and desire to do business with the Iowa lender? Obviously, that's documented. It's more than just what's written in the affidavits, which, by the way, is why the district court could rule in the way that she did. What about the fact that Ms. Davin had a long-term relationship with Ms. Middleton? Oh, there's no doubt about that. That's stated. It makes no difference here, because in this particular fact pattern, she was acting on behalf of Green Cycle Housing, as is reflected in the offering memoranda. She was the executive director of that company. And she was soliciting loans for Mr. Echstein and his business. Keep in mind, this was seed money. This was supposedly supposed to go into this enterprise, which was to be used to entice other banks or other investors to come into this business. So, also, in answer to your question earlier, it was also related to him personally. With respect to him personally, how was their business arrangement different from that of an ordinary broker who gets paid a commission for identifying possible lending sources? He gave the answer to that, again, in response to the compensation, where he said she gets a 10 percent profit share plus the 3 percent. So the fact that he referenced a profit share. Yeah, I think that, yes, that's certainly one factor. And, again, there's a discussion in the texts and in the e-mails about how they are going about to do business. She was not only working Ms. Middleton. She had an effort in New Jersey where she was trying to raise money in New Jersey that's referenced. I think one of the initial documents was addressed to some investors in New Jersey. What other than the contacts with Ms. Middleton ties this contract to Iowa? Are the contacts with Ms. Middleton enough? Yes. This is a specific. What do you make of the Eighth Circuit statement at FASTPAT talking about Iowa's jurisdiction? It says, our minimum contacts analysis looks to defendants' contacts with the forum state itself, not the defendant's contact with the persons who reside there. FASTPAT seems to be, that was a case in which there was aggressive pursuit of business opportunities in Iowa, negotiation agreement, but performance of the agreement was elsewhere. And the Eighth Circuit, notwithstanding all the contacts and the aggressive pursuit of business opportunities, said not enough for personal jurisdiction, seeming to disagree with the district court judge in Iowa. Well, I think that was a general jurisdiction case, not specific jurisdiction. Facts were very, facts. Specifically about the contacts with regard to this case. I'll take a look at that. I think the. But what other than the contacts with Ms. Middleton is there about this contract? There's no performance like delivery of goods or other things like that or manufacturing of goods in Iowa. It's simply negotiation of agreement and payment back into Iowa. Again, it's incorrect. It's a specific jurisdiction case. Which the Supreme Court and the Eighth Circuit and the Iowa Supreme Court all acknowledge that's enough. Keep in mind, in the Aggregate case, the only contact that the individual had was making the guarantee. That was his single contact. Now, he had other contacts in the context of the company that he was working in, but to create a personal jurisdiction over him was a single act of rendering the guarantee. Thank you. Thank you. We'll hear from opposing counsel. We'll reserve three minutes. Thank you. The guarantee also emphasized, again, the Ostrom case, the highest court in Iowa, talking about the personal guarantee and where the court states that taking an assignment of a personal guarantee executed in Iowa by an Iowan coupled with discussions with Iowans regarding the personal guarantee were not sufficient to support personal jurisdiction in Iowa, particularly in light of the Georgia non-exclusive forum selection clause of the personal guarantee. We have a forum. There's no forum selection pointing towards Iowan anything, and indeed the only forum in Connecticut where all of the entirety of this business, as envisioned by everybody, was to take place in Connecticut, New York, possibly New Jersey. And then the cases have also discussed that the fast path in particular, the future aspirations of people when we're talking about specific jurisdiction don't matter. Everybody has dreams and plans, unless a cause of action arises from those things and there's a misrepresentation or something. This is not a misrepresentation case. There's no connection to Iowa. There's no consequences in Iowa other than the plaintiffs living there. And as the Supreme Court recently reminded us in the Wal-Mart versus Fiore case, we must look to what the defendant did, not what the plaintiff did. The plaintiff has all the characteristics of being in Iowa, but the defendant does not. And that's why it is not fair in this case to pin jurisdiction on what the plaintiff in the case does, wishes or hopes for, versus what the defendant did. This is someone who, and the agency is, you can use the word agency, but I think you have to put the lens on, magnify it a little bit more and see what actually happened. What this person actually said or did that was of any consequence to this loan, any whatsoever. People collect money for brokering loans every day. That doesn't make you a personal agent. It's just not enough there. Thank you. Thank you. I do want to correct the record. You were right. FastPath is a specific jurisdiction case, but the locus of activity was outside Iowa. But you're right. It was a specific jurisdiction. Thank you. I just want to correct that. Okay. Thank you both. We'll reserve decision.